## T. J. COLLINS *v.* THE STATE.

1. ASSAULT WITH INTENT TO COMMIT MURDER — CHARGE OF THE COURT. —
The State proved a previous difficulty between the accused and his antag-
onist, and that the accused, being himself armed, sought and provoked
the *rencontre* in which he shot his antagonist, though notified that the
latter was unarmed.    There was a conflict of evidence as to whether the
latter, when fired upon, was making hostile demonstrations against the
accused.    The court below gave in charge to the jury the law of self-
defence, but refused to instruct on aggravated assault, and the accused was
convicted of assault with intent to murder, as charged in the indictment.
*Held,* that, under this state of case, it was not incumbent on the court to
give instructions on the law of a less grade of offence than that charged.

2. FACT CASE. — See facts held sufficient to sustain a conviction for assault
with intent to murder.

3. NEW TRIAL. — Being convicted of assault with intent to murder, the ac-
cused applied for a new trial on account of newly discovered evidence,
consisting of medical testimony to the effect that, by reason of an old
wound in the brain, the accused was abnormally irritable, and bereft of
self-control under excitement.    One of the supporting affiants was the
step-father, intimate friend, and physician of the accused, who testified at
the trial touching the *res gestæ,* but without disclosing this new matter.
*Held,* that want of due diligence is apparent, and a new trial was prop-
erly refused.

APPEAL from the Criminal District Court of Harris.
Tried below before the Hon. G. COOK.

John J. Ryan, the party assaulted, testified that on the
night of April 26, 1878, he attended a ball at the town of
Harrisburg.    Collins, the accused, was also at the ball,
and during one of the dances he insulted the lady with

whom witness was dancing. "He pooted at her with his mouth." After the dance, witness approached the accused to demand an apology, when the latter raised his hand, and witness struck at but missed him. Witness struck again, and hit the accused, when others interposed. Afterwards, the accused and two others attacked witness on the steps leading to the ball-room, and kicked him in the ribs. Witness invited and offered the accused $10 to come down stairs and fight it out. With this the matter rested, and witness thought it was all over. Witness is a machinist, and works at the machine-shop in Harrisburg. The next day, April 27, 1878, when the dinner-bell rang, witness washed, and started for his dinner, when the accused hailed him, saying, "Hey! Ryan," in an ordinary tone of voice. Witness stopped and turned round, and the accused, who was then distant one hundred or one hundred and fifty feet, came on until he got within twenty feet, when, with his hand on his pistol, he said to witness, "You did me dirty, last night." Witness replied that he would do any body so who insulted a lady he was with. The accused said, "It's a lie," and asked witness if he was armed. Witness replied, "No, I am not armed, and you know it, or you would not do me as you are doing. I need no arms to whip you; and if you will throw away your pistol, I will give you all you want." Dr. Pilaut said, "Gentlemen do not fight that way in Texas, but I will give you a fight." Witness replied, "Doctor, I have nothing to do with you, but with this man Collins." The accused cursed witness, and witness cursed the accused; and the altercation continued for two or three minutes, until witness said, "You are a little stinking nothing." He said he would not stand that from any body. He said, "Stand back," drew his pistol, and fired at witness, who ducked his head, and the ball passed over it. Witness then turned to run, and the second shot struck him in the arm and passed through the lappels of his coat. Witness ran, and

the accused fired at him a third shot, but missed him.    The wound received in the arm was a flesh-wound.    Dr. Pilaut told the accused to stand his ground, saying, " You have backed far enough."    Witness did not advance on the accused, nor make any hostile demonstration, when shot at; and he could not say why Dr. Pilaut told the accused he had backed far enough, nor to whom the accused referred when he said, " Stand back;" but witness supposed that the accused spoke this to persons in rear of witness, whom he did not want to hit.    When the first shot was fired, the accused and witness were from twenty to twenty-five feet apart.    Witness was not armed.    He and the accused had been friends up to the ball-room difficulty. The lady did not tell witness that the accused had insulted her, but she asked witness, " Did you see that? "

Four other witnesses testified for the State, and corroborated Ryan in all substantial particulars.    They said that Ryan did not advance on the accused, but that during the altercation, which lasted several minutes, each of the parties had gradually shifted their positions, perhaps a couple of steps, in the direction of the accused.

Two or three of the participants in the ball, testifying for the defence, gave an explanation of the supposed insult offered by the accused to the lady.    According to them, she declined to " turn " the accused when he tendered her that evolution during the mazes of the " Sicilian Circle ; " and he emitted a sucking noise, habitual to him when embarrassed.    In other respects, their account of what transpired on that occasion between the accused and Ryan did not conflict with the latter's testimony.

S. D. Ward, a deputy-sheriff, further testified for the defence, that, on the day of the shooting, he had a summons to serve on the accused as one of the grand jury, and left word for him to meet witness at the depot at noon of that day.    The accused came as requested, and witness told him he must go at once to the court at Houston ; to which

he replied that he would go home, get his horse, and start at once. About ten or fifteen minutes afterwards, some one told witness of the shooting. A road leading from the depot to the house of the accused passed by the machine-shop, and was one usually taken by the accused.

Dr. Pilaut, for the defence, testified that, in the forenoon of the day of the shooting, he called to see some of his patients who lived near the machine-shop, and was requested by one of them to convey an urgent request to the accused about renting a house belonging to the latter. Witness got nearly to the machine-shop, when he saw the accused, and communicated to him the request. Accused said he was in a hurry to get his horse and go to Houston, where he had been summoned by Ward, the deputy-sheriff; and told witness that dinner was ready, as the whistle had blown, and that he and witness had better go to dinner. They started together, and as they approached the gate of the machine-shop, Ryan and others passed out of the gate and started on in advance of witness and the accused. The accused hailed Ryan, and the latter stopped and turned round; and the accused walked up within twenty or twenty-five feet of Ryan, and asked him if he wished any thing of him to-day. Ryan asked, "About what?" and the accused replied, "About that difficulty last night." The accused remarked, "You treated me badly last night." Ryan replied, "I would do you or any other d—n man that way who would insult a woman under my charge." The accused said, "If you say I insulted a woman last night, you lie;" and asked Ryan if he was armed, telling him, if he was not armed, to go and arm himself, if he wanted to settle it. Ryan said, "You put down your arms, and I will whip you." Witness then said to Ryan, "Gentlemen don't fight that way in Texas; but I will give you a fair fight, as that is my way of fighting." Ryan said, "I have nothing against you, Doctor;" and witness replied, "Neither have I any thing against you." Then Ryan said, "But I have against

that G——d d——n stink; he is a d——n nothing," — referring
to the accused; and Ryan then started to advance on the
accused, who backed, and told Ryan to stand back.   Wit-
ness said to the accused, "You have backed far enough,"
and the accused told Ryan to stand back.   Priday, who was
standing behind Ryan, said, "He is armed;" and witness
thought he meant that Ryan was armed.   Then the accused
fired, his first shot passing over Ryan's head, the second
striking him, and the third missing.   The accused and wit-
ness were going along their usual road from the depot to
the residence of the accused.   Witness is the step-father
of the accused, and they live in the same house.

Two other witnesses for the defence concurred in all
material respects with Dr. Pilaut's account of the affray.

The court below charged the jury upon the offence of
assault with intent to murder, and upon the right of self-
defence; but refused to give special instructions asked by
appellant's counsel on the law of aggravated assault.   The
jury found the appellant guilty of assault with intent to
murder, and assessed his punishment at two years in the
penitentiary.

The appellant filed an original, and subsequently an
amended, motion for a new trial.   The former assigned
the omission of the general charge to instruct the jury
upon aggravated assault and battery, the rejection of
the special instructions asked on that offence, and the
verdict of the jury as contrary to and unsupported by the
evidence.

The amended motion sought a new trial on the ground of
newly discovered evidence.   The appellant's affidavit in
support of it alleged that in 1864 he was seriously wounded
in the head by an accidental discharge of a gun, a portion of
the charge lacerating the brain, from the effect of which he
still suffered; that when he became excited or fatigued, the
injury produced convulsions, and that it rendered him easily
excited and influenced by anger, passion, or fear, and while

so influenced the restraining power of his reason was overcome; that, since the trial, he had discovered that he could prove by Drs. Dowell and Pilaut, who attended him when so wounded, that the natural effect of the wound was to produce irritability of temper, and to incapacitate him, when angered or excited, from controlling his acts by the exercise of his reasoning powers; that he had also discovered, since the trial, that he could further prove by said Dr. Pilaut, who had been intimately acquainted with him, that he was still so influenced by the effects of said wound; that, if he is guilty of any offence, it was committed unintentionally, and when he was influenced by fear and apprehension of immediate and serious bodily injury; that the fact that he could make such proof by Drs. Dowell and Pilaut was unknown to him at the time of his trial, has been discovered since, and could not, by reasonable diligence, have been discovered prior to the trial.

To this application the accused appended the affidavits of the physicians, conforming to his own representations, and also the affidavit of his counsel to their ignorance of such proof until after the trial.

The court below overruled the application, and entered judgment in pursuance of the verdict; and this appeal was taken.

*E. P Hamblin,* and *Jones & Garnett,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State, in support of the refusal of instructions, cited *Pugh* v. *The State,* 2 Texas Ct. App. 539; *Hines* v. *The State,* 3 Texas Ct. App. 484; *Sims* v. *The State,* 4 Texas Ct. App. 144; *Weaver* v. *The State,* 24 Texas, 388.

To sustain the refusal of a new trial on account of the alleged newly discovered evidence, counsel cited *Gross* v. *The State,* 4 Texas Ct. App. 249; *Williams* v. *The State,* 4 Texas Ct. App. 255; *Harmon* v. *The State,* 3 Texas Ct.

App. 51; *Walker* v. *The State*, 3 Texas Ct. App. 70; *Benson* v. *The State*, 2 Texas Ct. App. 46; *Johnson* v. *The State*, 2 Texas Ct. App. 456.

ECTOR, P. J.   T. J. Collins, the defendant in this case, was indicted for, and convicted of, an assault with intent to murder one John J. Ryan.   The main questions in this case arise upon the charge of the court, and upon the refusal of the court to give the instructions asked by the defendant.

The evidence substantially shows that Collins, the defendant, and Ryan, the party alleged to have been assaulted, both lived at Harrisburg, in Harris County, and on the night of the 26th of April, 1878, were at a ball at Harrisburg. Ryan was dancing with a lady whom he had accompanied to the ball.   He believed that, in one of the dances, Collins had offered an insult to his (Ryan's) partner.   After the dance was over and the ladies seated, Ryan went up to Collins and demanded an apology of him, and finally struck him.   Other persons interfered, and separated them. Shortly afterwards, Collins kicked Ryan, on the steps leading down stairs from the ball-room, when they were again separated.   Ryan then tried to get Collins to come down stairs and fight him a fair fight.

Ryan worked in the machine-shop at Harrisburg.   On the next day, April 27, 1878, at noon, when the whistle blew, Collins and Ryan both started for dinner.   Ryan, and several others with him, passed out of the gate at the machine-shop, and started on down the highway.   Collins hailed Ryan, who was some one hundred or one hundred and fifty feet ahead of him.   Ryan, on being hailed, stopped and turned around.   Collins walked up to within twenty or twenty-five feet of Ryan, and asked him if he wished any thing of him "to-day."   Ryan replied, "About what?" Collins said, "About that difficulty last night."   Collins remarked that Ryan had treated him badly the night before.

Ryan replied that he had treated him as he would him or any other man who would insult a woman under his charge. Collins then said to Ryan, " If you say I insulted a woman last night you lie."

It further appears from the evidence that a quarrel immediately ensued between Collins and Ryan, in which they cursed each other. Collins was armed with a pistol, and Ryan was unarmed. Collins finally drew his pistol and shot at Ryan three times. The first shot missed him ; the second shot hit him in the arm, as he turned to run ; and the third shot was fired at and missed him as he ran. There is some conflict in the evidence as to whether Ryan, at the time he was first shot at, was making any hostile demonstrations against Collins.

The court substantially charged the law of the case applicable to the facts in evidence in reference to an assault with intent to murder. The defendant did not except to the charge, nor ask any additional instructions on this point. The court also gave the defendant the benefit of a charge upon the law of self-defence. We make the following extract from the charge of the court : " Every man has the right to defend himself against attack, producing reasonable expectation or fear of death, or some serious bodily injury. If you believe that defendant acted under such expectation or fear, and had reasonable ground for it, he would not be guilty of any offence. The defendant is presumed to be innocent until his guilt is established by the evidence, to the satisfaction of the jury, beyond a reasonable doubt; and unless you are so satisfied by the evidence in this case, find the defendant not guilty."

The defendant asked the following additional instructions, which the court refused to give : " The jury are instructed that, if they believe from the evidence that the defendant is not guilty of an assault with intent to murder, and if you further believe from the evidence that the defendant, T. J. Collins, did, as charged in the indictment, make an assault

upon said Ryan with a deadly weapon, and if you further believe that such assault was made under a sudden provocation, and without premeditation and forethought, and that said assault was made while under a sudden passion, the jury will find the defendant guilty of an aggravated assault and battery, unless the evidence further shows that said assault was made in self-defence as heretofore charged. If the evidence satisfies you, beyond a reasonable doubt, that the defendant, T. J. Collins, is guilty of aggravated assault and battery, then you will assess the punishment at not less than one hundred dollars nor more than one thousand dollars, and imprisonment in the county jail not to exceed two years, or by fine alone, without imprisonment, in any sum not less than one hundred nor more than one thousand dollars.'' We do not think the court erred in refusing to give the instructions asked by the defendant.

From all the evidence, taken together, it is clear to our minds that the defendant, being armed with a deadly weapon, provoked the difficulty, and finally shot at Ryan with intent to kill him, when he (Collins) was in no real or apparent danger of losing his life, or of any serious bodily injury. There was nothing in the evidence tending to establish, or from which the jury might have concluded, the offence to be a lower grade than that of assault with intent to murder. The jury were justified in the conclusion that the defendant was guilty of an assault with intent to murder.

The court did not err in overruling the defendant's motion for new trial. The facts stated in the amended motion for new trial are of such a nature as to preclude the idea that they were newly discovered, or that they could not have been discovered sooner by the use of proper diligence on the part of the defendant. If the wound inflicted upon the head of defendant several years before the trial so affected him that, under excitement, or the emotion of fear, anger, or passion, he has been since then unable to control.

his acts, as is claimed by him, Dr. Pilaut, his relative, who lived in the same house with him, and who was a principal witness for the defence in the trial, certainly knew the fact.

We have given the entire record the most careful con-sideration, and we find nothing which would warrant a reversal of the judgment of the court below. It is there-fore affirmed.

*Affirmed.*